THE UNION ROLLING MILL COMPANY

*v.*

THOMAS GILLEN.

*Filed at Ottawa June 20, 1881—Rehearing denied September Term, 1881.*

1. INSTRUCTION—*as to cause of accident in suit for negligence.* In a suit to recover for a personal injury claimed to have resulted from the negligence of the defendant railroad company, an instruction for the plaintiff, that if, while the plaintiff was crossing the track, the defendant ran its train upon the track, recklessly and negligently, without ringing a bell or blowing a whistle, or giving a warning of any kind, and ran a car upon and against the plaintiff's wagon, thereby smashing the same and throwing plaintiff from his seat in the wagon, *thereby* causing to the plaintiff serious injury, then plaintiff is entitled to recover, especially in view of the conflicting character of the evidence, was *held* not erroneous, as omitting the vital condition that the reckless running of the train, and failing to give the usual signals, must have been the cause of the accident. The word "thereby," in the instruction, was intended to refer to all that preceded it, both as to the act of propulsion and the act of striking.

2. NEW TRIAL—*obviated by a remittitur.* There is no error in denying a motion for a new trial in an action *ex delicto*, where the plaintiff, by entering a *remittitur*, reduces the damages awarded by the jury to an amount the court considers reasonable.

3. SAME—*newly discovered evidence.* Although the newly discovered evidence shown for a new trial may have an important bearing on a second trial, yet a new trial will be denied where the requisite diligence has not been exercised to discover such evidence.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county.

Messrs. LAWRENCE, CAMPBELL & LAWRENCE, for the appellant.

Messrs. HYNES, ENGLISH & DUNNE, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The Union Rolling Mill Company is a corporation engaged in the manufacture of iron and steel, and having its furnaces

and its mills for rolling the metal in the city of Chicago. It owns a couple of switch engines, for the purpose of delivering on or removing from its premises cars loaded with its material, upon certain spur or switch tracks, which are laid to connect its grounds with the tracks of the Chicago and Alton Railroad Company, which pass through this part of the city. November 21, 1878, Gillen was engaged in hauling stone to the mills of the Union Rolling Mill Company. Having delivered a load, and while passing over one of the switch tracks above mentioned, where it crosses Ashland avenue, a collision occurred between his wagon and a car load of coke which was being backed along said track by one of the engines of the rolling mill company. The wagon in which Gillen was riding was crushed, and he received some injuries, to recover damages for which this suit was brought, and which resulted in his obtaining a verdict for $5000, and a final judgment for $3000, in the circuit court, a *remittitur* of $2000 having been entered by plaintiff, in accordance with a suggestion of the court. On appeal to the Appellate Court for the First District the judgment was affirmed, and the company appealed to this court.

As to the question of fact whether the verdict is supported by the evidence, that must be considered as settled by the judgment of the Appellate Court, and we can consider only the questions of law raised in the case, and not controverted questions of fact.

The giving of the second instruction for the plaintiff is assigned as error.

The instruction stated, that if Gillen was crossing the track while in the exercise of due care and diligence, and defendant ran its train upon the track " recklessly and negligently, without ringing a bell or blowing a whistle, or warning of any kind, and that the defendant ran said car upon and against the plaintiff's wagon, thereby smashing the same, and thereby throwing the plaintiff from his seat on the

wagon, and thereby causing to the plaintiff serious injuries, then the plaintiff is entitled to recover." The objection taken to the instruction is, that it omits the vital condition that the running of the train "recklessly and negligently, without ringing a bell or blowing a whistle, or warning of any kind," must have been the cause of the accident; that, admitting no warning was given, it does not necessarily follow that such omission or negligence was the cause of plaintiff's injuries.

Appellee's counsel insist that the word "thereby," in the instruction, was evidently intended to refer to all that precedes it, both the manner of propulsion and the act of striking, and that it could not have been otherwise understood by the jury. We are inclined to take this view of the instruction, especially in view of the evidence in the case.

Gillen, the plaintiff, testifies that, going north on Ashland avenue, when he started to cross this switch track, the locomotive was standing, with a car attached, upon the track, about eight or ten feet west from where he crossed; that when he got to the track it was still standing, and just as he went to move across, walking his team slowly, the engineer put on steam and the engine ran against him, etc. Another witness corroborates this statement that the engine and car were standing still on this side track at the time, and both state the bell was not rung nor the whistle sounded. In opposition to this, Reagan, who was in charge of the locomotive, states that he ran up the main track on Ashland avenue until he got to the switch; that he ran north of that, when the switch was thrown over, and he reversed his engine and backed right up on this switch track; that after the switch was turned, and he commenced backing up, he made no stop whatever until he struck the wagon, and that the train did not stop until it got across the road, shoving the wagon on before the car some eight or ten feet. Donnelly, who was on the engine with him as fireman and switchman,

confirms this statement, and both testify that the bell was rung during the time.

This is all the testimony in the record upon this point. There was a direct conflict of testimony between the two sets of witnesses. The jury must have accepted that on the part of the plaintiff, and rejected the other. They could not, we think, have been in any way misled by this instruction. If plaintiff was acting in the manner set out in the instruction, and the servants of the defendant were managing the engine as mentioned therein,—if the evidence given by plaintiff's witnesses was accepted as being true, which it evidently must have been by the jury,—then the starting and running the engine without giving any warning must have caused the accident.

Complaint is made of the modification by the court of the fourth and fifth instructions asked for the defendant. We do not think there is any just ground of complaint upon this score.

It is insisted the court should have granted a new trial because the damages were excessive; that after finding them to be such, it was erroneous to allow the plaintiff to remit $2000 upon the verdict of $5000 rendered by the jury, and enter judgment for $3000, after such *remittitur*. It is contended that while this may be proper in actions *ex contractu*, it is otherwise in actions *ex delicto*, and that in such latter actions it should· be taken that a jury which is unfair in assessing the damages is also unfair in deciding upon the issue.

The practice here adopted has been sanctioned by this court in a number of cases, at least so far as to refuse to reverse judgments entered under like circumstances. *McCausland* v. *Wonderly*, 56 Ill. 410; *Thomas* v. *Fischer*, 71 id. 576; *Illinois Central Railroad Co.* v. *Ebert*, 74 id. 399. Although misgivings may have been expressed in some cases, as in the last, and *Lœwenthal* v. *Streng*, 90 Ill. 74, as to the propriety

of the practice were it a new question, it is one not singular in this State.

In Sedgwick on Damages, 603, it is laid down: "Where the jury have given such excessive damages that the court feel bound to set aside the verdict, they will, instead of simply ordering a new trial, give the plaintiff the option of reducing the verdict to the sum which the court considers reasonable, and on his remitting the excess will deny the motion for a new trial, and this in actions of tort as well as on contracts,"—in support of which quite a number of cases from different States are cited.

We must hold, in accordance with our former decisions on the subject, that there is no error in this last regard.

There were two motions for a new trial made and overruled, the first in usual course before judgment, and the second in connection with a motion to vacate the judgment after its entry, but before the expiration of the term; and the overruling of the motion to vacate the judgment, and this second motion for a new trial, is urged as ground for reversing the judgment. The last named motions were upon the ground of newly discovered evidence.

Upon the trial the plaintiff had testified to his bad physical condition, his lameness, pains, etc., and his physician testified that in his opinion his injuries were permanent, although it was conceded that if plaintiff was a rheumatic person, many of the pains which troubled him might proceed from that condition instead of from the accident; but plaintiff testified that he never had had rheumatism in his life, and never had been lame before the accident; that he had not been drinking anything that day, nor at any time. The newly discovered evidence was, that plaintiff had before suffered from rheumatism; that he had been treated for it for quite a time, and had experienced lameness from it; that his habits of life had been intemperate, and that he had a scar of a gunshot wound, one inch in length, on his

person, near the hip.    No doubt this was important evidence for the defence, as going to show that the present condition of plaintiff might be referable to a greater or less extent, not to the accident, but to his physical condition before the accident occurred, and might materially lessen the amount of damages on another trial.    But the circuit court may have been of opinion that there had not been the exercise of the requisite diligence to discover this evidence before the trial, and on that ground have overruled the motion; and if such were the case, we are not prepared to say the court erred in that respect.

The judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*

Mr. JUSTICE DICKEY did not participate in this decision.